# Exhibit I

# SR 5094 Jan 23 1929

Case 3:20-cv-00063-MOC-WCM #D7-6 Filed 06/30/24 20/129 Page ID #2402

Mr. REED of Pennsylvania. Mr. President, may I ask the calendar numbers of the bills?

Mr. BLEASE. They are Calendar Nos. 1483 and 1484. There is a unanimous report from the Committee on Immigration, and the bills are indorsed by the Secretary of Labor and the Immigration Commissioner. There are going to be some matters along this line taken up in the House on Friday. I had a talk with Chairman JOHNSON last night and he asked me to get the measures over to the House before then if I possibly could.

Mr. REED of Pennsylvania. Will the Senator be willing to withhold his request for half an hour to enable us to read the bills?

Mr. BLEASE. That will be agreeable to me. The Senator will find the reports with the bills.

Mr. BLEASE subsequently said: Mr. President, the Senator from Pennsylvania [Mr. REED] does not now object to the consideration and passage of the two bills which I asked to have considered a few moments ago. I now ask unanimous consent for the consideration of Senate bill 5093.

The PRESIDING OFFICER (Mr. JOHNSON in the chair). Is there objection to the present consideration of the bill referred to by the Senator from South Carolina?

There being no objection, the Senate, as in Committee of the Whole, proceeded to consider the bill (S. 5093) to authorize the issuance of certificates of admission to aliens, and for other purposes, which was read as follows:

*Be it enacted, etc.,* That an alien who has been lawfully admitted to the United States for permanent residence and who has continued to reside therein since such admission, shall upon his application to the Commissioner General of Immigration, in a manner to be by regulation prescribed, with the approval of the Secretary of Labor, be furnished with a certificate made from the official record of such admission. Such certificate shall be signed by the Commissioner General of Immigration and shall contain the following information concerning such alien: Full name under which admitted; country of birth; date of birth; nationality; color of eyes; port at which admitted; name of steamship, if any, and date of admission. Such certificate shall also contain the full name by which the alien is then known, his signature, and his address. A photograph of the alien shall be securely attached to the certificate, which shall bear an impression of the seal of the Department of Labor.

SEC. 2. Such certificate shall be prima facie evidence of the lawful admission of such alien. A fee of $3 shall be paid by such alien to the Commissioner General of Immigration for each such certificate. The moneys so received by the Commissioner General of Immigration shall be paid over to the disbursing clerk of the Department of Labor, who shall thereupon deposit them in the Treasury of the United States, rendering an account therefor quarterly to the General Accounting Office, and the said disbursing clerk shall be held responsible under his bond for such fees.

SEC. 3. This act shall take effect July 1, 1929.

The bill was reported to the Senate without amendment, ordered to be engrossed for a third reading, read the third time, and passed.

Mr. BLEASE. I ask unanimous consent for the present consideration of Senate bill No. 5094.

There being no objection, the Senate, as in Committee of the Whole, proceeded to consider the bill (S. 5094) making it a felony with penalty for certain aliens to enter the United States of America under certain conditions in violation of law, which had been reported by the Committee on Immigration with an amendment, in section 2, page 2, line 9, after the word "hereunder," to insert the words "the clerk shall notify the marshal who has the prisoner in custody and he," so as to make the bill read:

*Be it enacted, etc.,* That any alien who has been arrested and deported in pursuance of the provisions of the immigration act of February 5, 1917, or the immigration act of 1924, and who thereafter shall enter the United States in violation of law shall be deemed guilty of a felony, and upon conviction thereof shall be punished by a fine not to exceed $1,000 or by imprisonment for a term of not more than two years; and upon payment of the said fine or at the expiration of the term of said sentence shall be taken into custody upon the warrant of the Secretary of Labor and deported in the manner provided in the immigration act of February 5, 1917.

SEC. 2. That upon the conviction of any person or persons under the provisions of the above section, the clerk of the said court shall promptly notify the Secretary of Labor thereof, and of the terms, place, and date of the expiration of the said sentence; and upon the payment of any fine imposed in lieu of imprisonment hereunder, the clerk shall notify the marshal who has the prisoner in custody and he shall detain the prisoner for a period not to exceed five days if so much shall be necessary for his or her apprehension and being taken into custody under warrant of the Secretary of Labor as heretofore provided.

The amendment was agreed to.

The bill was reported to the Senate as amended, and the amendment was concurred in.

The bill was ordered to be engrossed for a third reading, read the third time, and passed.

TIMBERLANDS IN YOSEMITE NATIONAL PARK

Mr. WALSH of Montana. Mr. President, there is pending before the Congress, now in the hands of the conference committee of the two Houses, a bill which empowers the Secretary of the Interior to condemn any and all lands held in private ownership in national parks. It has been represented that there are certain timberlands in the Yosemite National Park which are likely to be logged out during the ensuing year. That is offered as the reason why urgency in that matter is necessary.

I am this morning in receipt of the following telegram:

LOS ANGELES, CALIF., *January 22, 1929.*
Hon. THOMAS J. WALSH,
*United States Senate, Washington, D. C.:*
Referring to a dispatch from Washington in the Los Angeles Times of to-day, stating that the lumber company owning lands in Yosemite Park plans to begin operations within the park on April 1, next, I beg to advise you on behalf of Arthur H. Fleming and myself, who control the company referred to, Yosemite Lumber Co., that that company does not plan or intend to operate within the park at any time this year, and will not do so. We have so advised Senator SHORTRIDGE.
ROBERT C. GILLIS.

I ask that the telegram be referred to the committee of conference on the bill to which I have referred, the Interior Department appropriation bill.

The VICE PRESIDENT. Without objection, it will be so referred.

FIRST DEFICIENCY APPROPRIATIONS

The Senate, as in Committee of the Whole, resumed the consideration of the bill (H. R. 15848) making appropriations to supply urgent deficiencies in certain appropriations for the fiscal year ending June 30, 1929, and prior fiscal years, to provide urgent supplemental appropriations for the fiscal year ending June 30, 1929, and for other purposes.

The PRESIDING OFFICER (Mr. JOHNSON in the chair). The question is on the motion of the Senator from Tennessee [Mr. McKELLAR] to suspend paragraph 3 of Rule XVI for the purpose of proposing the amendment relating to tax refunds, which has heretofore been read.

Mr. McKELLAR. Mr. President, on yesterday, when the Senate took a recess, we were discussing the question of tax refunds. I want to call the attention of Senators this morning to this situation: During the last eight years the Treasury Department, under its back-tax system, has collected $3,900,000,000, in round figures. The department has engaged in that work an army of back-tax attorneys and agents. How much that army of tax attorneys and agents cost the Government I do not know, but I think that during the time I have stated it may be safely estimated that the cost to the Government for that service has been not less than half a billion dollars. Frequently heretofore, when this subject has been brought up, the Internal Revenue Bureau has replied that it is true the service has cost a great deal of money, but that the refunds amounted to only about one-fourth, or 25 per cent, of the money actually collected.

Now, I wish to call the attention of the Senate to the fact that in connection with the collection of Federal back taxes no citizen knows when he is going to finish paying such back taxes. If he sells a piece of property he has to figure in making the contract the probable amount of back Federal taxes that may be assessed against the transaction. If he transfers stock he has got to make similar careful calculations. This puts the average taxpayer in an embarrassing and oftentimes in a hazardous situation. He is constantly under the menace of a re or back assessment. It is unfair and unjust to the plain, everyday, average taxpayer and business man. Frequently that situation interferes with the free sale of stocks or other personal property, and also of real estate, because the taxes are at times quite excessive. In other words, under our present system of the collection of back Federal taxes no man knows when his is going to get through paying the Federal reassessments.

A Federal agent goes to Richmond, for instance, and decides who, in his judgment, should pay additional back taxes. No one ever knows when he has finished paying. So the question of back Federal taxes has come to be one of the serious questions in business in this country. If it were necessary, if good