UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| Plaintiff, | ) | CASE NO.4:20 CR 83 |
| | ) | |
| | ) | |
| vs. | ) | <u>MEMORANDUM OPINION</u> |
| | ) | <u>AND ORDER</u> |
| | ) | |
| WILLIE ANTONIO | ) | |
| SAMUELS-BALDAYAQUEZ, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Defendant, Willie Antonio Samuels-Baldayaquez's Motion to Dismiss Indictment. (ECF #17). The Government filed a Response in Opposition to the Motion, and the Defendant filed a Reply in support of his position. (ECF #21, 23). The Defendant argues that 8 U.S.C. §1326(a), the Illegal Reentry statute under which he was indicted, violates the equal protection guarantee of the Fifth Amendment and is, therefore, invalid. For the reasons set forth below, his motion is DENIED.

## FACTUAL BACKGROUND[1]

The Defendant is a citizen of the Dominican Republic. He entered the United States on July 2, 1995, and on November 13, 2008, was ordered removed by an Immigration Judge. He returned to the Dominican Republic on January 30, 2009. On June 15, 2011, he was found to be in the United States again and the prior removal order was reinstated. A warrant of removal was issued on December 6, 2011. On July 12, 2012, Mr. Samuel-Baldayaquez was indicted with violating 8 U.S.C. § 1326(a), Illegal Reentry. He pled guilty to the charge and on February 28, 2013, was sentenced to twelve months and one day of incarceration. On June 20, 2013 and July 1, 2013, additional warrants of removal were filed, and on July 16, 2013 he again left the United States for the Dominican Republic.

In July of 2019, the Defendant was identified in an investigation into the use of fraudulent identification documents being used to steal motor vehicles and watercraft. During the investigation, the Government discovered that Mr. Samuels-Baldayaquez was incarcerated in Connecticut on charges of identity theft, conspiracy to commit larceny in the First Degree, and Interfering with an Officer. In February of 2020, he was indicted by a federal grand jury in the Northern District of Ohio on charges of Illegal Reentry under 8 U.S.C. § 1326. This indictment is the basis for the current case before this Court. The Defendant has also been indicted in a separate case in this District, on charges of Conspiracy to Commit Bank Fraud, Bank Fraud, and Aggravated Identity Theft. (Case No. 1:20 CR 191).

---

[1] The facts have been taken from public records and from undisputed statements within the parties briefs and exhibits. The undisputed statements taken from the briefs and exhibits are accepted as true for purposes of this opinion only. They should not be construed as findings of the Court.

The Illegal Reentry provision of 8 U.S.C. §1326 was enacted by the 82nd Congress in 1952, over the veto of then President Truman. It has been amended multiple times, including by the Immigration and Nationality Act of 1965 and the Immigration Act of 1990. Pub. L. No. 89-236, Oct. 3, 1965, 79 Stat. 911-922; 136 Cong. Rec. 86839 (Oct. 27, 1990). While the legislative history of the precursor to this law, the "1929 Undesirable Aliens Act," undisputedly contained racist, discriminatory language and arguments directly aimed at reducing or eliminating Mexican immigration into the United States, no such evidence of racial animus has been shown to have motivated the 82nd Congress that adopted the current statute, or any of its later amendments.

## **ANALYSIS**

The Fifth Amendment of the U.S. Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law." This guarantee includes an implicit promise of equal protection under the law. *See Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 n. 1 (2017). In this case, the Defendant does not contend that the applicable statute is facially discriminatory, nor that it was applied in a discriminatory fashion, rather his claim is that he has been indicted for violation of a facially neutral law that was intended to, and does cause a disparate impact on Mexican and Latinx individuals. This type of equal protection violation was recognized by the United States Supreme Court in the case of *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). *Arlington Heights* was a local zoning case in which the Supreme Court said that an equal protection challenger need only show "proof that a discriminatory purpose has been a motivating factor in the decision" to grant or deny a zoning request, and that the decision has a disparate impact on a protected group. *Id.* at 265-66.

If these factors are met, the law is not automatically invalid, but becomes subject to strict scrutiny. Defendant cites only one case in which the *Arlington Heights* framework has ever been applied in an immigration case, *United States v. Carrillo-Lopez*, 3:20-cr-00026-MMD-WGC, 2021 WL 3667330 (D. Nev. Aug. 18, 2021).[2]

The Court believes that application of *Arlington Heights* to an immigration law challenge is misplaced and contrary to long standing United States Supreme Court precedent.[3] Congress has expansive authority over immigration affairs, and its actions in this area are "largely immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977). In fact, "over no conceivable subject is the legislative power of Congress more complete. . . ." *Id.* The courts extremely narrow review of immigration decisions applies even when constitutional issues are at stake. See, e.g., *Fiallo* at 796; *Trump v. Hawaii*, 138 S. Ct. 2392, 2419 (2018); *Kleindienst v. Mandel*, 408 U.S. 753, 761 (1972). In *Mandel*, the United States Supreme Court established that judicial review of executive decisions involving immigration issues is limited to the consideration of whether the decision is "facially legitimate and bona fide." *Mandel*, 408 U.S. at 769. "[W]hen the Executive exercises [its] power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification." *Id.* at 770. The same deferential approach was later extended to judicial review of

---

[2] This case is currently under appeal in the Ninth Circuit.

[3] A plurality of the Supreme Court recently declined to apply the rational basis standard to an equal protection challenges of executive branch actions involving immigration. *See, Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891; *Ramos v. Wolf*, 975 F.3d 872, 896 (9th Cir. 2020). The plurality decision does not override the cases cited below and neither case addressed congressional acts that were subject to the checks and balances of the legislative branch.

congressional acts. *See, e.g, Fiallo* at 795. In rejecting the constitutional challenge to an immigration preference based on sex, the Supreme Court remarked that the question was "solely []the responsibility of the Congress and wholly outside the power of this Court to control." *Id*. at 799. It further made clear that when it comes to immigration law, it is not the judiciary's role to "probe and test the justifications for the legislative decision." *Id.; accord, Hawaii*, 138 S. Ct. At 2419. The Court's role in reviewing the validity of immigration laws is, therefore, limited to the application of a rational basis review, using "minimal scrutiny." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1693 (2017); *see also, Hawaii*, 138 S. Ct. at 2420; *Mathews v. Diaz*, 426 U.S. 67, 82 (1976); *Hussein v. Beecroft*, 782 Fed. Apps. 437, 439 (6th Cir. 2019).

The rational basis test is satisfied where "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 320 (1993); *Ashki* v. INS, 233 F.3d 913, 920 (6th Cir. 2000). The "burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it. . . ." *Id.* "The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, being an inherent and unalienable right of every sovereign and independent nation, essential to its safety, its independence, and its welfare" has long been recognized. *Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893). Also long recognized is the right to establish means, including the establishment of criminal consequences, to enforce any such restrictions. *See, Wong Wing v. United States*, 163 U.S. 228, 235 (1896). Congress' right to enforce immigration restrictions alone provides a rational basis for the illegal reentry law.[4]

---

[4] The Defendant in this case does not argue that there is no rational basis for the Illegal Reentry statute under which he was indicted.

The more recent Supreme Court case of *Ramos v. Louisiana,* 140 S. Ct. 1390, 206 L. Ed. 583 (2020), cited by the Defedant, does not change the analysis of what standard applies to the review of immigration laws, nor does it support Defendant's other arguments. First and foremost, *Ramos* was not an immigration case. It, therefore, has no bearing on what standard the Court should apply when reviewing the validity of an immigration statute. Further, although *Ramos* did indeed review and acknowledge the racist and discriminatory history behind Louisiana's failure to require a unanimous jury decision in criminal cases, its decision to override Louisiana's position did not rely on the existence of historical discriminatory intent, or on the equal protection clause. The historical context of the challenged law provided important insight as to why the challenge was so important, but did not provide the legal basis for the Court's opinion invalidating the law.

Finally, even if *Arlington Heights* applied, the Defendant has not made an adequate case to invalidate 8 U.S.C. §1326 under its framework. The Defendant claims that 8 U.S.C. §1326, originally enacted in 1952, should be invalidated by this Court because the legislative history of its precursor, the "1929 Undesirable Aliens Act," clearly shows that the author, and several supporters of that law had racially discriminatory motives, and because it continues to have a disparate impact on Mexicans and other Latinx individuals.[5] He provides no evidence of

---

[5] The legislative history provided in support of Defendant's motion does not directly address the illegal reentry provisions of the original Act, rather, it focuses on the debate regarding the imposition of numerical limits restricting the overall number of Mexican immigrants. The record also includes counter arguments from Congressmen who sought to prevent any reduction in Mexican immigration. It also bears noting that the Defendant is not Mexican, but rather hails from the Dominican Republic. Although his motion claims the law disparately affects both Mexican and Latinx individuals, the supporting materials speak almost exclusively to the effect on Mexican immigrants. Thses materials also make clear that immigration from Mexico continued to be allowed under the 1924 and 1929 immigration Acts, whereas Asians were banned from immigration into the United States.

discriminatory motivation in the 1952 enactment of §1326, or in its subsequent revisions.[6] There is no evidence before the Court that would suggest the legislators who voted to enact the 1952 law, 8 U.S.C. §1326, which is the basis of Mr. Samuels-Baldayaquez's indictment, had the same motivations or racial animus as those who enacted the 1929 Act.[7] There is also insufficient evidence to show that the Illegal Reentry law has a discriminatory disparate impact on Mexican or Latinx individuals. Although there is evidence that Mexican and Latinx people make up the vast majority of individuals apprehended at the border, there is no evidence that they are disproportionately represented in convictions for illegal reentry under 8 U.S.C. §1326(a). Further, even if there were evidence of a disparate impact on Latinx individuals, there is no evidence that this is due to "an invidious discriminatory purpose" rather than some neutral factor such as geographic proximity to the border. Absent an invidious discriminatory purpose, disparate impact alone is not sufficient to support a finding of unconstitutionality. See, e.g., *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1915-16; *Washington v.*

---

[6] The comments by President Truman explaining his veto of the 1952 law did not include any mention of concerns about disparate impact or discriminatory intent affecting Mexican or Latinx people. Rather, President Truman's reservations were based on his belief that the bill did not sufficiently increase immigration quotas overall, and that it was discriminatory against Asians and individuals from Southern and Eastern Europe. (ECF #17-Ex. 8).

[7] This is not to say that there were no members of the 82nd Congress who may have had discriminatory motives. Indeed the legislative history reveals the use of racial slurs and racially charged rhetoric aimed at degrading and dehumanizing Mexicans. However, the rhetoric appears to have been primarily advanced by members of Congress who supported a veto of 8 U.S.C. §1326, and/or by those who supported a racially charged amendment, neither of which were ultimately successful. (82 Cong. Rec. 8122 (June 26, 1952). *See, United States v. Wence*, 2021 U.S. Dist. LEXIS 112805 *20 (Dist. Virgin Island, June 16, 2021). Therefore, it does not provide any insight into the opinions or motivation of the Congressmen who actually voted for the legislation.

*Davis*, 426 U.S. 229, 242 (1976).   Further, a finding of discriminatory intent combined with disparate impact does not automatically result in invalidation under *Arlington Heights*.  Rather, it increases the standard of review to strict scrutiny.  Although arguing for the application of *Arlington Heights,* the Defendant does not directly address whether the criminal sanctions for Illegal Reentry under 8 U.S.C. §1326, even if motivated by discrimination, could survive strict scrutiny.

## **CONCLUSION**

For the reasons set forth above, the Court finds that Defendant, Mr. Samuels-Baldayaquez's Motion to Dismiss the Indictment is not supported by the record or by the applicable law.   The motion is, therefore, DENIED.  (ECF #17).  A Change of Plea Hearing remains set for November 17, 2021 at 12:00 noon by video conference.   IT IS SO ORDERED.


     /s/ Donald C. Nugent
    DONALD C. NUGENT
    United States District Judge


DATED:   November 5, 2021